Judge Cash:
This case, which was delivered to us as one too plain for argument, I have found exceedingly difficult and perplexing. A forthcoming bond being taken, the debtor, at the day of sale, pays to the creditor the lull amount of the debt, interest and costs, except the sheriff’s commission. The question is, could a motion be afterwards made, and execution awarded on this, as a forfeited delivery bond.
The act of 1769, though it did not create those bonds, was the first to prescribe their form, and give to them the *523 force of judgments. I(. says that, “If the owner of the goods shall fail to deliver up the same, according to the condition of the bond, or to pay the money or tobacco MKtNTioNjei» in the execution, the sheriff shall return the bond to the clerk’s office, there to be safely kept, and to have the force of a judgment.” These have continued to be the words of the law from that day to this. At the time of passing this act of 1769, and from a much earlier period, the sheriff was entitled to a commission for the mere act of serving an execution, as the laws of that day term it; and this continued the law and the practice, until the year 1788. Then there passed an act, saying that the sheriff should have his commission (not as formerly for serving the execution merely,) but “for proceeding to sale, if the property be actually sold, or the debt paid.” In 1791, an act passed, saying that “the sheriff serving an execution, if the property be actually sold, or the money paid,” shall be entitled to his commission. The act; of 1792, allowed the sheriff a commission “ for proceeding to sell on any execution on behalf of the Commonwealth, or of any individual, if the property be actually sold, or the debt paid.”
Under this state of the laws, the sheriffs were in the habit of including in the delivery bond, their commission on the execution. How long this practice had continued, we do not know. It was first brought under judicial notice, in Scott v. Hornsby, 1 Call, 41. There the sheriff had included his commission in the bond. The plaintiff entered a release for the commission, and the judgment of the District Court was rendered for the penalty of the bond, to be discharged by the sum due, after deducting the amount released. The defendant appealed. The Court decided, that the commission could not, under the then law, be inserted in the bond; but that the release cured the error. Judge Roane observed, that the commissions ought not to have been included in the bond; 1st, because they are no part of the amount of the money or tobacco due thereon, but are only a collateral recompense, to the sheriff; 2d, be *524 cause by the same act, the bond is to be discharged by payment 0f the money or tobacco mentioned in the execution, which shews that the bond should be given for nothing more than what is mentioned in the execution. He adds, “ By the provisions of this act, the defendant may discharge the condition of his bond, either by delivery of the property, or, as I have before said, by paying the money or tobacco mentioned in the execution, and not that recited in the bond.” In the same book, 48, Worsham v. Eggleston, motion on delivery bond. The condition of the bond recited the amount of the execution to be, 7342lbs. of tobacco, and 21. 16 6, including interest, costs, and sheriff’s commissions. The District Court gave judgment for the amount of the condition, and from that judgment, Worsham appealed. Per Cur. The judgment, in which the sheriff’s commissions are included, is clearly wrong. It must therefore be reversed, &c. In entering such judgment as the District Court ought to have entered, they say, “The Court is of opinion, that the judgment is erroneous in this, that the same is entered for the amount recited in the forthcoming bond, in which bond it is stated, that the sheriff’s commissions are included, which by law he was .not entitled to.”
The Legislature, to remedy this inconvenience, passed a law in 1794, saying that “ the sheriff may include his commission in any forthcoming bond, taken by virtue of any writ of execution; but he shall not demand or receive such commission, unless the same shall be forfeited.” What did the Legislature mean by saying, that the sheriff should receive no commission, unless the bond were forfeited ? If, upon the levying of an execution, or at any time before the day of sale, the debtor paid the money to the sheriff, there can be no question, that he would have a right to his commission, because it is given to him, “if the goods be sold, or the money paid.” But suppose that instead of paying the money, the debtor gives a delivery bond. Then the commission of the sheriff depends on the *525 forfeiture of the bond; and suppose that on the day of sale, or before, the debtor pay up the whole money due, commission and all. Here the bond surely is not forfeited;and if not forfeited, the sheriff (says the law) shall have no commission. If the sheriff, where the bond is not forfeited, has no right to a commission, then it cannot be necessary to pay the commission, in order to save the forfeiture; for the obligation to pay, arises only upon the forfeiture. Again; if the commission depends solely on the forfeiture of the bond, how is it, where the property is delivered at the day of sale ? There the forfeiture is certainly saved; and though the sheriff must sell, yet the bond not being forfeited, how can he claim his commission ? This law was made for the benefit of sheriffs; ana yet here are two cases put, in one of which the money is paid, and in the other, the property sold by virtue of the execution, and still, by a literal construction of this law, the sheriff loses his commission; though by the law then in force, and still in force, he was entitled to it for levying an execution, if the goods he sold or the money paid. It is not proper, it is scarcely decent, to deduce such absurd conclusions from Legislative enactments. There must, therefore, be some construction, which will avoid the dilemma. What that construction is, I confess I have not been able exactly to discover. I must, therefore, leave it with my brethren, more experienced and abler than I am, to untie this gordian knot. For myself, I must cut it, and say, that though I cannot pretend to see precisely what the Legislature meant, I feel sure that they could not mean, In such a case as this, to deprive the sheriff of his commission. The law of 1794, intended to better his condition; to give him something which he did not before possess. The Legislature could not mean (though the words seem to import it) that this law should receive a construction which would defeat its object, and place it in direct contradiction to another law, standing on their statute book. To avoid those const; *526 quences, I am obliged to decide that the bond is forfeited, anc¡ ¿foe sheriff entitled to his commission.
The judgment, therefore, must be affirmed.
Judge Gkeen:
The practice in England, by which the expense of suing out execution upon a judgment, and of levying it, was borne by the plaintiff without any redress against the defendant, never prevailed here; but, on the contrary, with us, it appears to have been the invariable practice, to levy upon the execution, not only the sheriff’s commission, but any other expense legally incurred by the plaintiff, in enforcing the judgment. In England, the precise amount of the costs, adjudged to the party, was specified in the judgment; and the execution issued accordingly, and no more could be levied, because no more was commanded to be levied. But with us, the judgment is general, for “the costs expended by the plaintiff;” and this judgment has always been considered as embracing all costs expended by the party, in prosecuting his right, whether before or after the judgment. Our statutes have incidentally, not only recognized, but sanctioned, this construction and practice. Thus the act of 1705, ch. 51, provides that property taken in execution shall be restored to the defendant, upon his tendering to the sheriff “the sum commanded to be levied by the execution, (with such costs as are also to be levied;”) plainly admitting that some costs might be levied, not commanded to be levied by the execution; and this could only be the sheriff’s commission; for no other costs could then be incurred. So the first act authorising a forthcoming bond, (1726) provided, that the property should be restored to the debtor, if, on the day appointed for the sale, he tendered to the sheriff, “the debt, damages and costs, for which his goods and chattels shall be so taken?’ and the same expression was used in the act of 1748, ch. 12. So the act of 1734, authorised the defendant, when *527 goods were taken in execution, to replevy the samo for 12 months, upon giving bond and security for “ paying the money for which the execution was served, and all costs.” The act of 1748, which substituted 3 months for 12 months replevy bonds, required bond and security to pry the “money for which the execution was served, and all casis, with interest.” So the act of 1788, which directed the appraisement of goods taken in execution, provides, that the plaintiff shall pay the fees of the appraisers, and they “shall be considered as a part of the costs, and be reimbursed to him accordingly.”
Up to the year 1788, the sheriff was entitled to a commission for “ serving an execution.” This is the expression in all the previous acts; and to this commission, the expressions cited from the various acts of Assembly alluded. That of the act of 1705, “ with such costs as are. also to be levied,” as has been already observed, could not allude tc* any thing else. The goods were taken for the debt and sheriff’s commission; and therefore the acts of 172G and 174S, use the expression, “ for which his goods were so taken,” as equivalent to the expression of the act of 1705, in a more condensed form. The expression “and all costs,” in the acts of 1734 and 1748, was used to the same purpose. The act of 1788, gives no mode of recovering the costs paid by the plaintiff for valuing the property; but refers to some known method, and directs that he shall recover them “accordingly” as costs. I think it may be. concluded, that by our laws, all legal costs incurred by the plairhiff, in enforcing his judgment,'may be recovered of the defendant, as the principal, debt and costs specified in the execution may he recovered. This conclusion is verified by the judgment of this Court, in the case of Bronaugh v. Freeman, 2 Munf. 266, affirming a judgment on a forthcoming bond, in which was included the sheriff’s fee for taking the bond. This fee was never allowed until 1788, is a part of the costs not literally mentioned in the execution, and not authorised (at that time) expressly by any *528 statute, to be included- in the bond. It could, therefore, have been sanctioned by the Court in that case, only on the ground that the plaintiff was. entitled to recover all cos1;s incurred by him after judgment, in the same way that he recovered the debt and costs expressly mentioned in the execution.
In 1769, an act passed prescribing the form of the forthcoming bond, and giving it the force of a judgment in certain cases; the precise terms of which have been preserved in all our subsequent revisáis. It directs that the bond shall recite “the service of the execution, and the amount of the money or tobacco due thereon;” and that it should have the force of a judgment, if the defendant failed to deliver the property, “ or to pay the money or tobacco mentioned in the execution.” According to the views already taken, the sheriff’s commission was a part of the money due upon the execution, and therefore expressly directed, by this statute, to be put into the forthcoming bond; the only purpose of which was, to shew the amount due from the defendant. The expression, therefore, “to pay the money or tobacco mentioned in the execution,” could not be taken literally, without attributing to the Legislature an intention to discharge the defendant, upon the payment of less than was due. These words were probably considered as equivalent to the expression in the former part of the statute, “ due thereon,” and were construed accordingly. That the sheriff was entitled to a commission when a forthcoming bond was taken and forfeited, and that the.plaintiff was, of.course, entitled to recover it against the defendant, is, I think, apparent from this; that in 1788, an act was passed for the express purpose of depriving the sheriff of a commission, in such case; an act vvhich would have been superfluous, if the construction of the former acts had not been as I have supposed.
I think, therefore, that the expression in our present statute, (the same as in the act of 1769,) “ to pay the money mentioned in the execution,” is not to be taken literally, *529 but means all the money “due on the execution,” ineluding all legal costs, to which the plaintiff"may have been subjected; and that the only question in this caso is, whethcr the sheriff, in the event which has occurred, (the pay-men!; on the day appointed for the salo, of the amount of the forthcoming bond, except the sheriff’s commissions,) is or is not entitled to a commission.
This question depends on the construction of the act of 1794, which provides, that the sheriff may include his commissions in a forthcoming bond, “but shall not demand or receive them, unless the bond be forfeited.” To understand the object of this statute, we must see how the law stood before it was passed, and ascertain the object which the Legislature had in view,
I have already observed, that until 1788, a sheriff was entitled in all cases to a commission, “for serving an execution. ” There were several cases, in which, although the execution was served, the properly was not sold, nor the money paid; as in ease of a forfeited forthcoming bond, a replevin under the act of 1787, after the property was actually exposed to sale, and it was ascertained that it would not sell for three-fourths of its appraised value; a supersedeas and reversal of the judgment; or an injunction perpetuated. In 1788, the Legislature took up this subject, for the express purpose of reforming the sheriff’s fee-bill; as appears by the negative words used in the statute. By that act, a sheriff is allowed a fee for taking bonds, (forthcoming or replevin) to the creditor, and a specified commission “ for proceeding to sale under an execution, if the property be actually sold, or the money paid; and half the commission for proceeding to sale, if the defendant shall have replevied; and no other fee or reward,” &e. This act was temporary, and continued by an act of 1791; which I notice only for the purpose of observing, that the act of 1791, gave a construction to the expression of the act of 178S, “or the money paid,” which, as it stands there, might be susceptible of the construction, that no comm is *530 sion waá due, even if the money was paid, unless it were paj¿[ aj~ier the sheriff had proceeded to sale. The act of 1791, adverted to the subject of the sheriff’s commission, only f°r the purpose of increasing the rate of cómmission, an(j allows the increased rate to any sheriff “ serving an execution, if the property be actually sold, or the money be paid;” shewing the then understanding of the act of 1788, to be, that the sheriff was entitled to a commission, if the money were paid at any time, either before or after he proceeded to sale. In 1792, the act of 178S, was re-enacted verbatim, except using the word “sell” instead of “sale,” and mentioning executions on behalf of the Commonwealth and individuals, and varying the rate of commissions; and so the law has remained ever since.
These acts varied the rights of sheriffs in respect to their commissions, very materially. In cases of replevin bonds, where, before they were entitled to full commissions, they were reduced to half commissions; and in the case of forfeited forthcoming bonds,supersedeas when the judgment was reversed, and injunctions perpetuated, they were wholly deprived of commissions; for in these cases, the property could neither be sold, nor the money paid, one of which was absolutely necessary to entitle the sheriff to a commission, under those acts. And so it was decided by this Court, in Worsham v. Eggleston, 1 Call, 48; in which ease, a judgment on a forthcoming bond, including the sheriff’s commission, was reversed, because the sheriff was not entitled to it; and this was assigned as the reason for the reversal, in the judgment of the Court.
This was the state of the law, when the act of 1794, was passed. The sheriff was entitled to a commission only in two cases; where the property was sold, or the money paid. If a literal interpretation be given to this last act, then whenever a forthcoming bond was taken, and not forfeited, the sheriff was entitled to no commission. So that if the whole of the money, including the commissions, was paid, »r the property delivered according to the condition of the *531 bond, and sold and the money raised, the sheriff would he entitled to no commission; for in those cases, the bond would not be forfeited. The consequence would be, that wherever a forthcoming bond was taken, the two acts would be utterly inconsistent with each other; and the latter would repeal the former, in relation to all such cases. And it is obvious that upon this construction, the sheriff would, in no case, get a commission; for the defendant would only have to give a forthcoming bond, and either pay the debt or deliver the property, and thereby avoid the payment of any commission. Eut these acts have not been considered as so inconsistent with each other, as that the one necessarily repeals the other, in any case; for in the revisal of 1819, they are re-enacted verbatim into one act; and if they are inconsistent, neither is now prior in time to the other, so as to abrogate that other. These two clauses of the act now in force, must therefore, be reconciled if they can, by any possible construction, be so reconciled.
It was obviously the intention of the Legislature, to benefit sheriffs, by allowing them a commission in a case, (a forfeited forthcoming bond) in which they were not before entitled. No possible motive can be conceived, why they should intend to deprive a sheriff of a commission (to which he was before entitled) when a forthcoming bond was given and the property delivered and sold. Whilst they intended to give this benefit to the sheriffs, the Legislature still intended to preclude the claim of the sheriff to a commission, as before, if the money was not paid, the property sold, or the bond forfeited, as in the cases of supersedeas and injunction. To have effected this object, it would have been sufficient to have declared, that the sheriff should be entitled to a commission, if a forthcoming bond was forfeited. Such an expression would have left him his former rights in case of sale or payment, and given him a new right, in case of a forfeited forthcoming bond; and there would have been no apparent conflict between *532 the two acts: and the law of 1792, would still have precluded the sheriff from claiming a commission, where the forfeiture of the bond was saved by any other means, than by payment of the money or delivery of the property, At the first blush, no one would be likely to perceive the difference, in effect, between the expressions, “ In addition to the fees heretofore allowed to a sheriff, he shall be entitled to a commission, if a forthcoming bond be forfeited, and he may.include such commission in the bond; and shall ■be entitled to demand and receive it,, if the bond be forfeited;” and “In addition to the fees heretofore allowed to a sheriff, he shall be entitled to a commission, if a forthcoming bond be forfeited, and he may include such commission in the bond; but shall not be entitled to demand or receive it, if the bond be not forfeited.” These expressions, prima facie, wo did seem to be equivalent to each other; and either of them might readily be adopted to convey the meaning of the other, although one is negative and the other affirmative. It seems to me, that the Legislature have incautiously adopted the latter expression, in substance, to convey the meaning of the former; and that the true effect of these laws is, that a sheriff is entitled to a commission, in all cases, where the property is sold, the money paid, and a forthcoming bond forfeited, and in no others: and that, consequently, the plaintiff was entitled to the commission in question, as a part of the money due on the execution, or what I take to be an equivalent expression, “mentioned in the execution.”
This construction obviates the apparent conflict between the two acts, and leaves to both, ample subjects for their operation.
I think the judgment should be affirmed.
Judge Co alter:
This is a case of more nicety and difficulty, and perhaps, of more importance, than was at first supposed.
*533 It seemed to be taken for granted, by the counsel who argued for the appellant, that the sheriff was entitled to his commission from the appellee; and that the latter could recover it of the appellant by a suit on the bond, or in some other way; but he contended, that under the words of the act of Assembly, the bond could not be returned to the office, there to have the force of a judgment, on which execution might issue, if the appellant, on the day of sale, paid the money or tobacco mentioned in the execution: that the costs of the suit alono, are mentioned in the execution, which says nothing about the sheriff’s commission, or even the fee for taking the bond; and that therefore, a remedy by motion did not exist.
If, however, the sheriff is entitled to his commission and fee for taking the bond, and may issue his ticket therefor, against the plaintiff, or make distress of his goods for it, and the plaintiff cannot recover on motion on the bond, I doubt very much, whether he must not lose it. If he sues on the bond, the defendant could plead a payment, &.c. which, though not. a performance of the condition, is a lawful excuse for not performing it, and equally saves the forfeiture of the penalty; and this would leave the plaintiff nothing to sue on. Besides, if he has discharged himself from the penalty, he was entitled to have the bond delivered up and cancelled. Could the plaintiff sue him for money had and received, laid out and expended, or on any other implied promise? As at present advised, I incline to think he could not. Ou the contrary, I think it would he a case of costs incurred by the plaintiff, in levying an execution, which he could not recover from the defendant, and a casus omissus in the law. In all other cases (as may be seen by the history and various phraseology of the laws, from the earliest times to the present) the costs of the execution has been considered as much an exigency of the writ of execution, as any other part of it. The sheriff has been authorised to levy for the whole, and the defendant could not discharge himself by payment, unless he *534 paid the whole; and if a bond intervened, as a replevy (as ft jg called) the commission was included in it, or paid by the party to the sheriff. Even the commissions 0n this execution, by the express provisions of the statute, are directed to be put into this bond, in order to secure them to the plaintiff, should he be liable therefor.
Under this view of the only point made in the argument, I think it would be sticking too much in the letter of the act, to construe the words “ mentioned in the execution,” in their strictest and most literal sense. I would construe them to mean, as well the debt, damages and costs, expressly mentioned in the execution, as all other costs authorised to be levied by it, under the laws of the land, and directed by law to be put in the bond; understanding that the execution as much commanded or mentioned that, as it did any other sum expressly named in the execution. On this point, therefore, I have no hesitation in sustaining the judgment.
But doubts have arisen, whether, under the sound construction of the act of 1794, ch. 3, sec. 11, this bond was forfeited, so as to entitle the sheriff to his commission; in which event only, would the appellant be bound to pay it.
That act authorises the sheriff or coroner to include his commissions, in forthcoming and replevy bonds; but provides that he shall not demand or receive such commissions on forthcoming bonds, unless the same shall be forfeited.
. On this point, it appears to me, the question will turn mainly on the construction to be put on the word forfeited.
In considering this question, it seems to me not to be very matérial to enquire, whether the sheriff was entitled to a commission on a forfeited forthcoming bond, before the act of 1794, or not; and therefore I shall omit stating those considerations, which induce me to believe that he was; and also those which would induce me to think, that if this question was now material, we would not be precluded from considering it, by the case of Scott v. Hornsby, and other similar cases, formerly before this Court. *535 Those eases were long posterior to the act of 1794, and took place in consequence of that act, and under perhaps a belief that before that act, a commission was not allowed in such case. That question seems not to have been argued or much considered in tho.se cases; nor do I think, so set-tied as to preclude enquiry, were that now necessary. Indeed, the act merely directs the commission to be put into the bond, thereby recognizing a pre-existing right to a commission.
It is sufficient at present, however, that this case has arisen since the act of 17.94, and that, since that time, it is admitted that he is entitled to such commissions.
But it is said that he only is entitled, in case the bond is forfeited; and that if the debt, interest and costs, including those commissions, are paid, the bond is not forfeited; and then the sheriff (not being entitled to this commission,) must return the money; or that it is not necessary to pay it, in order to save the forfeiture. This involves us in a kind of logical absurdity or dilemma, which we cannot suppose the Legislature intended.
Every law almost on this subject, for the last century, has put the case of payment of an execution, on the same footing with the case of the money being made on a sale, as to the sheriff’s commissions. There was no reason, therefore, for any discrimination in this case from ordinary cases.
But it seems to me, that we may get out of this dilemma, by construing the word forfeited, to mean a technical forfeiture by not. delivering the property. The bond is taken for its forthcoming, so that the sheriff may sell it. The non-delivery works a legal forfeiture. The act, however, provides, that ¡he debtor may be excused, and this forfeiture shall not attach upon him, if he pays the debt, &c. But if he is sued, the breach will be for a non-delivery of the property. To this he cannot plead conditions performed, if his defence is payment of the debt. He must confess and avoid, by setting up this excuse of payment» *536 But that excuse, as before shewn, must be a payment of a]j; including the commissions.
These observations are made, as applicable to delivery bonds in the form in which they now are, and, I believe, always have been, drawn, simply for the delivery of the properly.
But suppose the form had been different; and that after the words “shall well and truly deliver,” Sic. the condition had contained the words “or shall pay the money mentioned in the said execution,” then, &c. Would such bond have been considered void, and contrary to law, in consequence of these latter words? Surely, I think it would not. But if the party would not have saved the forfeiture under such a condition, unless he had paid the whole, (including sheriff’s commissions,) then the consequence would be, that under a bond in this form, the sheriff would get his commissions, but not under one in the form now in use.
For these reasons, 1 think the judgment must be affirmed.
Judgment affirmed. *

 The President, and Judge Cadf.ld, absent. Judge Cabedd was present at Hie argument, aud authorised one of the Court to declare his concurrence in the decision.